IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

FILED

MAR 19 2010

WILLIAM B. GUTHRIE
Clerk, U.S. District Court
By_____
Deputy Clerk

NATHANIEL JACKSON,  )
                    )
        Plaintiff,  )
                    )
v.                  )   No. CIV 09-166-RAW-SPS
                    )
RANDY WORKMAN, et al., )
                    )
        Defendants. )

## OPINION AND ORDER

This action is before the court on the defendants' motion to dismiss or for summary judgment. The court has before it for consideration plaintiff's complaint [Docket #1], the defendants' motion [Docket #19], and plaintiff's response [Docket #21]. Plaintiff, an inmate in the custody of the Oklahoma Department of Corrections (DOC) who is incarcerated at Oklahoma State Penitentiary (OSP) in McAlester, Oklahoma, brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at that facility. The defendants are OSP Warden Randy Workman, DOC Director Justin Jones, OSP Unit Managers Harry Reading and William Taylor, and OSP Chief of Security Mr. Jones.[1]

Plaintiff alleges he was housed in a two-man cell in A-Unit under 23 to 24-hour

---

[1] To the extent the defendants are sued in their official capacities as DOC officials, plaintiff's claims are barred by the Eleventh Amendment. It is well settled that a damages suit against a state official in his official capacity is merely another way of pleading an action against the State. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). *See also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1988) (state officials sued in their official capacities are not "persons" for purposes of a § 1983 suit, because the suit is against the official's office and not against the official).

lockdown from the time he first was incarcerated at OSP in November 1988. He claims that on March 3, 2009, he was brought to his mental "breaking point" when he again was asked to strip down to his undershorts and shower shoes and to cuff up, so Correctional Officer Rowell and another correctional officer could search his cell for the fourth time in two weeks. Plaintiff believed the search was a form of harassment, and he refused to strip down. The correctional officers left plaintiff's cell and returned with the unit manager and one of the unit officers. Plaintiff asked to be taken to H-Unit and placed on the disciplinary unit. Unit Manager Tracy Davis granted his request, and Correctional Officer Rowell and the other correctional officer conducted the cell search.

Because Correctional Officer Rowell was "a little frustrated," plaintiff was not permitted to take any of his personal property from his cell. Unit Manager Davis and Correctional Officer Glover escorted him to the disciplinary unit and placed him in an empty cell. Plaintiff alleges the area was so filthy that he felt sick, although his cell was better than the outside day room area. Gang taggings were all over the walls of his cell, and the plastic window in his cell door had so many gang carvings that he barely could see through it. The food hole was extremely filthy, and there was no light bulb in the wall fixture. Another fixture was missing with exposed live wires remaining.

The first 24 hours plaintiff received nothing, sleeping on an old cotton mattress. His requests for a bed roll, a light bulb, and some tissue paper were not answered until March 4, 2009. The next day Correctional Officers Petty, Wilson, and Benefield came to plaintiff's cell with another inmate. Plaintiff refused to cuff up, because he did not want a cell partner. Officer Benefield became "verbally disrespectful" and then took the other inmate to the shower before moving the other inmate to an empty cell. That evening, plaintiff's cell water

2

and toilet water were turned off by the "combined thoughts" of Officers Petty, Riley, Benefield, and Wella. On March 6, 2009, plaintiff asked for a light bulb and to have his water turned on, but his requests were not answered. At dinnertime that evening, Officer Riley skipped plaintiff's cell when passing out food. When plaintiff asked when he would be fed, Riley allegedly said, "You won't get nothing until you learn to do as your [sic] told." Plaintiff also asked Officer Benefield about his water and lights, but Benefield said plaintiff was not getting anything. On March 7, 2009, plaintiff still had no light or water, and Officer Riley denied him dinner for a second time. Officer Benefield, the senior officer, still did nothing to assist plaintiff.

On March 8, 2009, Officer Riley turned on plaintiff's cell water, and Officer Benefield gave him dinner. On March 9, 2009, Correctional Officer Martin brought plaintiff a new light bulb and asked plaintiff about making a cell move. Because the move would have meant a cell partner, plaintiff refused. Shortly thereafter, plaintiff gave Martin a Request to Staff asking for protective custody status, because plaintiff believes his past homosexual lifestyle puts him in danger of harm from gang members.

On March 11, 2009, plaintiff received a misconduct for failing to cuff up when the other inmate was brought to his cell. Plaintiff pled guilty to the offense. On March 15, plaintiff agreed to move from the disciplinary unit to C-Unit in a cell by himself on the general population section. When he arrived at his new cell assignment, he was told that after a month he would be required to have a cell partner. Contrary to that information, another inmate was brought to share plaintiff's cell the next day.

Plaintiff had filed a Request to Staff concerning his situation, and on April 7. 2009, he was escorted to Unit Manager William Taylor's office. Taylor informed plaintiff that he

3

could not have a single cell, and OSP no longer had protective custody. Plaintiff and Taylor were unable to resolve the issue, and on April 9, 2009, Case Manager Sherri Seymore gave plaintiff a Level 1 demotion for refusing a cell partner on H-Unit. Plaintiff refused to sign the demotion paperwork.

Plaintiff alleges he is being harmed by overcrowding, lack of hot water in the cells, cold showers 90% of the time, and no jobs or program opportunities. He asserts he suffers from mood swings, behavior changes, stress, and endless depression. He fears his cell partner may attempt to injure or kill him, because of the stress level in their circumstances. A new policy prohibits inmates from having a radio or television until they have one year of clear conduct on Level 2, and this policy change has only escalated the stress of having a cell partner.

Plaintiff also complains that he has to accept the clothing and bedding he is issued, but he is being issued used items, including filthy underwear. He claims the classification system is "in need of repair," he has been denied a transfer to lower security, and he has been denied the right to appear before the parole board. The officers on the disciplinary unit allegedly take all the inmates' clothing and shoes, leaving them in their underwear with bare feet. The inmates are forced to take their one hour of exercise in this state of undress, and they have to wear restraints the entire hour. While in restraints, some inmates are physically attacked by the officers. Plaintiff contends the restraints are used for punishment, not security.

Finally, plaintiff complains that his present cell partner received medications for mental health problems, so plaintiff is afraid the cell partner may become unbalanced and dangerous. In addition, plaintiff is forced to remain in his cell when his cell partner uses the

toilet--"truly a painful experience." Having to share his cell interferes with plaintiff's living where he is mentally, emotionally, spiritually, and physically healthy.

The defendants allege plaintiff has failed to exhaust his administrative remedies for the claims in this lawsuit. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). In deciding a motion to dismiss based on nonexhaustion, the court can consider the administrative materials submitted by the parties. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *abrogated in part on other grounds*, *Jones v. Bock*, 549 U.S. 199 (2007).

The procedure for exhausting administrative remedies is set forth in DOC Policy OP-090124, "Offender Grievance Process" [Docket #19, Exhibit 1]. An inmate first must attempt to resolve his complaint informally. If unsuccessful, he may submit a Request to Staff (RTS) within seven calendar days of the incident. If the complaint still is not resolved, he then may file a grievance within 15 calendar days of the incident, or the date of the response to the RTS, whichever is later. If the grievance also does not resolve the issue, the inmate may appeal to the Administrative Review Authority or the Chief Medical Officer,

5

whichever is appropriate, within 15 calendar days of receipt of the reviewing authority's response or any amended response. The administrative process is exhausted only after all of these steps have been taken for each claim.

The special report shows that on March 12, 2009, plaintiff submitted a RTS to DOC Director Justin Jones concerning his need for a single cell. On March 18, 2009, Debbie Morton with the DOC Administrative Review Authority forwarded the RTS to plaintiff's facility where it could be properly addressed. On March 31, 2009, plaintiff filed a handwritten RTS to C-Unit Manager William Taylor regarding the single cell issue. OSP Warden Workman drafted a memorandum to plaintiff on April 8, 2009, denying plaintiff's request for a single cell. On April 21, 2009, C-Unit Manager William Taylor drafted a memorandum to plaintiff reminding him of their previous discussion about the end of protective custody at OSP. Because plaintiff had no problems with his current cell partner, Taylor denied plaintiff's request for a single cell.

Plaintiff filed this civil rights action on April 27, 2009. On April 30, 2009, he filed a grievance regarding the multiple issues presented in this lawsuit, including the single cell issue raised in his Requests to Staff. The grievance was returned unanswered on the same day it was filed, because the grievance had more than one attachment, in violation of the policy regarding the submission of grievances. Plaintiff was advised he had ten calendar days to file a proper grievance.

Debbie Morton, DOC Administrative Programs Officer, states by affidavit in the special report that she reviewed plaintiff's grievances, and he has failed to exhaust the administrative remedies for the issues raised in this civil rights complaint. Mike Murray, DOC Nurse Manager, also states by affidavit that he reviewed the offender medical

grievance log and found no medical grievances submitted by plaintiff since November 27, 2001.

Plaintiff argues in his response to the motion to dismiss that he attempted to exhaust his administrative remedies before filing this lawsuit, but the defendants did not respond to his attempts and they have destroyed his proof. He also asks for a continuance, so he can exhaust his administrative remedies. The provisions of 42 U.S.C. § 1997e(a), however, require exhaustion prior to filing the complaint.

**ACCORDINGLY,** the defendants' motion to dismiss [Docket #19] is GRANTED, and this action is, in all respects, DISMISSED.

**IT IS SO ORDERED** this 19th day of March 2010.

RONALD A. WHITE
UNITED STATES DISTRICT JUDGE